* * * * * * * * * * *
The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Baddour and the briefs and arguments of the parties. The appealing party has not shown good grounds to reconsider the evidence, receive further evidence, rehear the parties or their representatives, or amend the Opinion and Award.
 * * * * * * * * * * *
The Full Commission finds as a fact and concludes as matters of law the following, which were entered into by parties as:
 STIPULATIONS
1. The parties are subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. The Travelers is the carrier on the risk.
3. An employee-employer relationship existed between the parties at all relevant times.
4. Plaintiff's average weekly wage is $803.85
 * * * * * * * * * * *
Based upon all the competent evidence from the record, the Full Commission finds as follows:
 FINDINGS OF FACT
1. At the time of the hearing before the Deputy Commissioner, plaintiff was forty years old. Plaintiff worked as a software engineer for defendant-employer for approximately fourteen years. Plaintiff's job duties required the repetitive use of her hands, wrists, and arms as a result of keyboarding and the use of a computer mouse.
2. On May 31, 2000, plaintiff presented to Dr. Joel D. Krakauer of Raleigh Orthopaedic Clinic complaining of right hand numbness, tingling, and pain for two to three years, with the same symptoms to a lesser degree on the left. Dr. Krakauer diagnosed plaintiff with a right dorsal wrist ganglion and right carpal tunnel syndrome aggravated by work with heavy computer use.
3. Defendants accepted plaintiff's claim as compensable via a Form 60 and provided wage compensation and medical treatment to plaintiff.
4. On July 10, 2000, Dr. Krakauer performed a right carpal tunnel release and excision of the right dorsal wrist ganglion.
5. On October 10, 2000, Dr. Krakauer assigned plaintiff a six percent (6%) permanent partial impairment of her right hand. On October 18, 2000, plaintiff was released to return to regular duty work effective October 30, 2000.
6. By Form 21 approved on December 1, 2000, plaintiff was compensated for a six percent (6%) permanent partial impairment of her right hand.
7. Upon her return to work, plaintiff experienced difficulty doing her regular job duties due to pain and numbness in her wrists. Plaintiff was required to seek assistance from other employees.
8. Based upon plaintiff's uncontroverted testimony, the defendant-employer placed plaintiff on a lay-off list due to the problems she was having working regular duty, and plaintiff was laid off by defendant-employer on or about April 20, 2001.
9. Defendants failed to show that plaintiff was terminated for misconduct and fault, unrelated her compensable injury, for which a non-disabled employee would ordinarily have been terminated by defendant-employer.
10. On June 12, 2001, plaintiff returned to Dr. Krakauer, complaining of pain in the dorsal aspect of her right wrist. A MRI of plaintiff's right wrist revealed a recurrent dorsal ganglion cyst.
11. On September 25, 2002, Dr. Krakauer noted that plaintiff had recently undergone unrelated back surgery and was ready to proceed with additional treatment of her right wrist. Dr. Krakauer again diagnosed plaintiff with a recurrent ganglion, as well as de Quervain's tenosynovitis.
12. On October 28, 2002, Dr. Krakauer performed an excision of the recurrent cyst and a right de Quervain's release.
13. On December 4, 2002, Dr. Krakauer assigned plaintiff a ten pound lifting restriction and indicated that she should avoid repetitive wrist activities.
14. On January 15, 2003, Dr. Krakauer assigned plaintiff a revised permanent partial impairment rating of ten percent (10%) to the right wrist.
15. On April 2, 2003, Dr. Krakauer stated that plaintiff had developed triggering of her middle and ring fingers postoperatively and opined that the triggering was related to the second surgery. On June 5, 2003, Dr. Krakauer requested authorization for right middle and ring trigger releases. The request for additional surgery was denied by defendants.
16. On or about July 2003, plaintiff's complaints of pain in her left wrist were noted by Dr. Krakauer, and she was diagnosed with left carpal tunnel syndrome. Dr. Krakauer testified that plaintiff complained of bilateral hand and arm pain when she was initially seen on May 31, 2000, and that it was likely his oversight that he did not initially diagnose the plaintiff with left carpal tunnel syndrome on May 31, 2000.
17. Dr. Krakauer requested authorization for left carpal tunnel release surgery and for an MRI of plaintiff's left wrist to determine whether she had a ganglion on the left. Defendants denied authorization for the requested release surgery and MRI.
18. The greater weight of the competent medical evidence of record establishes that plaintiff's work as software engineer placed her at an increased risk for developing her hand and arm conditions as compared with the general public not equally exposed, and additionally made a significant contribution to the development or aggravation these conditions. Plaintiff's hand and arm conditions include her bilateral carpal tunnel syndrome, de Quervain's tenosynovitis, wrist ganglion and trigger finger conditions.
19. Dr. Krakauer testified, and the undersigned so finds, that plaintiff is currently in need of left carpal tunnel release surgery and de Quervain's release surgery. In addition, plaintiff requires a current evaluation for possible treatment of her trigger finger condition and a MRI of her left wrist to determine whether she has a ganglion on the left.
20. In addition to her compensable bilateral hand and arm conditions, plaintiff suffers from non-work related left hip and back pain. Plaintiff began treating for her left hip and back pain as early as March 12, 1998. On or about August, 2000, plaintiff was diagnosed with greater trochanteric bursitis and IT band syndrome of the left hip. On September 8, 2001, plaintiff underwent a postlateral spinal fusion at L4-5 and L5-S1 with Brantigan instrumentation and right iliac crest bone grafting.
21. With regard to the issue of disability, Dr. Krakauer testified that he would defer to Dr. Elizabeth B. Gibbons, plaintiff's family physician, regarding plaintiff's present disability from a combination of her work related and non-work related medical conditions.
22. At the time of the expert medical testimony in this matter, plaintiff was treating with Dr. Gibbons for all of her medical conditions, both work related and non-work related. Dr. Gibbons testified, and the undersigned so finds, that plaintiff is presently totally disabled as result of her overall medical condition, and that plaintiff's hand and arm conditions are a contributing factor to plaintiff's present total disability.
23. Based upon the greater weight of the competent evidence of record, plaintiff has been totally disabled from on or about April 21, 2001, when she was laid off by defendant-employer, until the present and continuing.
24. There is no evidence of record attributing a percentage of plaintiff's total incapacity to her work related medical conditions and a percentage to her non-work related medical conditions.
25. Defendants did not defend this claim without reasonable ground.
 * * * * * * * * * * *
Based on the foregoing findings of fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. Plaintiff's employment with defendant-employer exposed her to a greater risk of developing her hand and arm conditions than members of the general public not equally exposed, and plaintiff's employment with defendant-employer made a significant contribution to the development or aggravation of these conditions. N.C. Gen. Stat. § 97-53(13); Rutledge v. TultexCorp., 308 N.C. 85, 301 S.E.2d 359 (1983).
2. Where a claimant is rendered totally unable to earn wages, partially as a result of a compensable injury and partially as a result of a non-work related medical condition, the claimant is entitled to an award for total disability under N.C. Gen. Stat. §97-29. Counts v. Black Decker Corp., 121 N.C. App. 387,465 S.E.2d 343 (1996).
Apportionment of an award of compensation for total disability has been allowed by our courts where only a portion of a claimant's total disability is caused by a compensable injury and a portion is caused by a non-work related condition, which is neither accelerated nor aggravated by the compensable injury.Id.
However, apportionment is not proper where the evidence renders an attempt at apportionment between work related and non-work related causes speculative, or where there is no evidence attributing a percentage of the claimant's total incapacity to the compensable injury, and a percentage to the non-compensable condition. Id.
3. Plaintiff is entitled to payment of medical expenses incurred or to be incurred as a result of her bilateral carpal tunnel syndrome, de Quervain's tenosynovitis, wrist ganglion, and trigger finger conditions as may reasonably be required to effect a cure, provide relief, or lessen the period of disability. N.C. Gen. Stat. §§ 97-2(19); 97-25.
4. Plaintiff is not entitled to attorney's fees. N.C. Gen. Stat. § 97-88.1.
 * * * * * * * * * * *
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. Subject to the attorney's fee approved below, defendants shall pay total disability compensation to plaintiff from April 21, 2001 to the present and continuing, until further order of the Commission.
2. Defendants shall pay for medical expenses incurred or to be incurred as a result of the compensable injury as may reasonably be required to effect a cure, provide relief, or lessen the period of disability, including payment of medical treatment for plaintiff's bilateral carpal tunnel syndrome, de Quervain's tenosynovitis, wrist ganglion, and trigger finger conditions.
3. Plaintiff's request for attorney's fees pursuant to N.C. Gen. Stat. § 97-88.1 is denied.
4. A reasonable attorney's fee in the amount of twenty-five percent (25%) is hereby approved to be deducted from sums due plaintiff and paid directly to plaintiff's counsel in one lump sum of the accrued amount due plaintiff and thereafter by deducting every fourth compensation check due plaintiff.
5. Defendants shall pay the costs due the Commission.
This the 30th ___ day of March 2006
 S/_______________ DIANNE C. SELLERS COMMISSIONER
CONCURRING:
 S/____________ BUCK LATTIMORE COMMISSIONER
 S/_____________ THOMAS J. BOLCH COMMISSIONER